UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMIRA SALEM,

       Plaintiff,

                                    No. 10-11943

-vs-                                District Judge Stephen J. Murphy, III
                                    Magistrate Judge R. Steven Whalen

MILLICENT WARREN, ET AL.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Amira Salem, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), has brought an action pursuant to 42 U.S.C. § 1983, alleging violation of her First and Fourteenth Amendment rights. Before the Court is her Motion for Summary Disposition (Summary Judgment) on the Issue of Liability [Doc. #21], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Motion DENIED.

**I.    FACTS**

      At the time of the events alleged in the Complaint, Ms. Salem was an inmate at the Huron Valley Correctional Facility. On August 10, 2005, she submitted a written request for special handling of her legal mail, including a request that legal mail be opened only in her presence. *Complaint*, ¶¶ 13, 15. She alleges in her Complaint that despite this request, the Defendants "have repeatedly opened incoming legal mail outside her presence." *Id*. ¶ 15. She lists 24 examples of specific legal mail alleged to have been opened outside her presence. *Id*. ¶ 15(a)-(n).[1] She also alleges 21 instances of legal mail

---

[1] In her Motion, at ¶ 4, Ms. Salem alleges two additional instances of legal mail being opened outside her presence.

being delivered unduly late. *Id*. ¶ 16(a)-(u).  She brings claims for violation of her First Amendment right to receive confidential legal mail (Count I) and, as a result of delay in delivery of legal mail, violation of her First Amendment right to access the courts (Count II).

In her Motion, Ms. Salem reiterates the instances of her legal mail having been improperly opened and/or delayed, and states that "the identified sixteen (16) instances of prison officials opening her legal mail outside of her presence after her submission of a written request for special handling of her legal mail, is factually irrefutable." *Brief in Support of Motion* [Doc. #21], at 11-12.  Her affidavit is appended to the Motion as Exhibit 3.  Also included with Exhibit 3 is a grievance response by Warden Millicent Warden, discussing Ms. Salem's complaint of delayed mail delivery.  Warren states that "[a]s a result of concerns regarding the processing of mail, changes have been made to improve mailroom function and processing."

In their response to this motion, the Defendants agree that Ms. Salem requested special handling of her legal mail.  They state that "[t]his entitled Salem to receive her legal mail in the Control Center of WHV unopened." *Defendants' Response* [Doc. #30], at 7.  Defendants also agree that on May 17, 2007, a legal envelope was in fact opened outside of Ms. Salem's present.  They point out that a notation on the envelope indicated "opened in error." *Id*. at 9.

In her complaint and affidavit, Ms. Salem listed a July 16, 2008 letter from James Armstrong as legal mail that was opened outside her presence. In her deposition, however, she testified that the letter was merely delayed, not opened outside her presence. *Plaintiff's Deposition, Defendants' Exhibit B*, 36-37.  This was not correspondence from an attorney or a court, but a Step III grievance response from James Armstrong of the

MDOC. *Id*. *See also Defendants' Exhibit E* (affidavit of Richard Russell). Ms. Salem also testified that on six other occasions where she alleged that legal mail was opened, the mail was merely delayed, not opened. These instances involved 2008 correspondence of March 5, July 30, August 20, September 4, September 18 and September 19. *Plaintiff's Deposition*, 30-49.

Attached to Defendants' Response [Doc. #30] as Exhibit G are copies of envelopes for legal mail that was sent to Ms. Salem at the Scott Correctional Facility, not the Huron Valley Facility, as well as Legal Mail Log-In Forms indicating that legal mail was delivered to and signed for by Ms. Salem on June 31, 2008, December 5, 2008, twice on December 19, 2008, June 12, 2009, September 10, 2009, September 28, 2009 and October 6, 2009.

Defendants' Exhibit D is the affidavit of Jose Philip, the mail room supervisor at the Huron Valley facility.  Mr. Philip states that the volume of inmate mail is large, with the prison receiving 10 to 20 large bags of mail daily. *Philip Affidavit*, ¶4.  He states that pursuant to Policy Directive 08.03.118, when an inmate requests special handling of legal mail, that mail is sent to the Control Center and opened in the inmate's presence.  *Id*. ¶ 6. However, he says, legal mail is sometimes opened inadvertently. When that happens, the envelope is taped shut, and a notation is made on the Legal Mail Log-In Form indicating that it was "opened in error." *Id*. ¶¶ 7-8. He states that MDOC staff never reads legal mail *Id*. ¶ 9.

Defendants' Exhibit F is the affidavit of Millicent Warren, the Warden of the Huron Valley facility.  She states that when she first arrived at Huron Valley in the Fall of 2008, there were some problems in the mail room occasioned by the MDOC having combined four different prisons. *Warren Affidavit*, ¶ 5.  However, she states, the problems

have been remedied, and there have been no mail problems since Spring of 2011. *Id*. ¶¶ 6, 9. She states that the procedure for legal mail entails the inmate being called to the Control Center, where both she and the corrections staff sign the legal log to indicate that the inmate received the mail. *Id*. ¶ 8.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the

opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION
#### A. Opening of Legal Mail

Prison inmates hold an interest in confidential attorney communication. "We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th 2003). *See Kensu v. Haigh,* 87 F.3d 172, 174 (6th Cir.1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts."). "[A] prisoner's right to receive mail is protected by the First Amendment and . . .the attorney-client relationship is shielded from unwarranted intrusion in criminal settings by the Sixth Amendment." *Sallier,* 343 F.3d at 878.

In *Wolff* v. *McDonnell,* 418 U.S. 539, 576-577, 94 S.Ct. 2963, 2985 (1974), the Court found that while inmates' legal mail should be opened only in their presence, their rights were subject to reasonable prison regulations, stating that tempering confidentiality

interests with reasonable safety restrictions was "entirely appropriate." *Id.* at 576, 2985. *See also, Parrish v. Johnson,* 800 F.2d 600, 603 (6th Cir. 1986) ("In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly-applied policy, open an inmate's incoming mail"). *Wolff* held that allowing staff to open attorney mail was permissible as long as the inmates were present. *Id.*

Ms. Salem names seven Defendants. Warren is the Warden of the Huron Valley Facility. Defendants Cindy Greenleaf and Dean Batkins are mail room supervisors. However, Supervisory liability under § 1983 is precluded even if the supervising entity is aware of improper activity of its subordinates and fails to act; it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Ms. Salem has offered no evidence that these supervisory Defendants had any personal involvement in opening or delaying her legal mail. To the contrary, Warren's affidavit indicates that upon becoming Warden, she remedied any mail room problems.

Defendants Sandy Samuels, Mary Randall, Joanne Colter and Mike Andrews were members of the mail room staff at Huron Valley. The complaint alleges that "[o]n information and belief [they] work[ed] in the mail operation, and [are] responsible for receiving and sorting mail, and identifying and properly handling legal mail." *Complaint* [Doc. #1], ¶¶ 5-8. Ms. Salem has thus far offered no evidence that these individuals were personally responsible for opening or delaying her mail. In her deposition, she testified, "There are many people in the mail room. They don't put initials. They don't write their name." *Defendants' Exhibit B, Plaintiff's Deposition*, 20. She testified that legal mail of August 13, 2007 was given to her by a Mr. Henderson, who refused to initial it and verify that it was opened. Henderson is not a named Defendant. The plaintiff in a § 1983 case

must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).[2] At this point, there is at a minimum a question of material fact as to these Defendants' liability.[3]

There are also questions of fact as to the substance of Ms. Salem's allegations. As shown by her own deposition testimony, six of her allegations of legal mail being opened actually involved mail that was delayed, not opened. One of the letters that was opened was not legal mail, but rather a Step III grievance response from MDOC staff.

Attached to Ms. Salem's motion as exhibits are copies of envelopes of legal mail she claim was opened outside her presence. The envelope of May 17, 2007 bears the notation "opened in error." None of the other envelopes have that notation. Rather, they bear handwriting of uncertain origin and meaning. Some appear to have Ms. Salem's own signature, a distinctive and stylized "A." Likewise, she has submitted a number of Legal Mail Log-In Forms from the Huron Valley facility, bearing her distinctive signature.

---

[2] Ms. Salem filed her motion for summary judgment before discovery was completed. She has not filed a reply to the Defendants' response.

[3] All Defendants have been named in both their individual and official capacities. To the extent that they are sued in their official capacities, they are protected by Eleventh Amendment immunity. States and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–101(1984); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton,* 24 F.3d 823, 826 (6th Cir.1993). The Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See McCoy v. Michigan,* 369 Fed. Appx. 646, 653–54 (6th Cir.2010) ("Because sovereign immunity extends to state instrumentalities, and the MDOC is an arm of the State of Michigan, the MDOC is entitled to sovereign immunity on the [plaintiff's] § 1983 claim") (internal citation and quotation marks omitted); *Sims v. Michigan Department of Corrections,* 23 Fed. Appx. 214, 215 (6th Cir.2001) ("Because the MDOC is a state agency and the state of Michigan has not consented to civil rights suits in federal courts, the MDOC is entitled to Eleventh Amendment immunity").

None of these indicate that her legal mail was opened outside her presence, in error or otherwise. According to the affidavits of Millicent Warren and Jose Philip, this would indicate that Ms. Salem's legal mail was *not* opened outside her presence, but was delivered to her consistent with the MDOC Policy Directive.

Thus, the evidence would support the a finding that at most, there were isolated and inadvertent instances of opening of Ms. Salem's mail, but that no MDOC staff actually read her mail. An "isolated incident" of improper mail handling does not constitute a violation of constitutional magnitude. *See Morgan v. Montanye,* 516 F.2d 1367, 1370-72 (2nd Cir.1975).

Given the unresolved issues of material fact, Ms. Salem is not entitled to summary judgment on this claim.

### B.   Delay in Mail/Right of Access to Courts

Prison inmates have a constitutionally protected right of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

As discussed above, Ms. Salem has not thus far shown that any of the named Defendants had personal involvement in delaying her mail. In addition, her deposition casts serious doubt as to whether she sustained actual prejudice as the result of delay in receiving her legal mail. Again, she filed this motion prior to her deposition, and she has

not filed a reply brief identifying any specific prejudice. In addition to many generalized claims of prejudice, Ms. Salem testified that in 2008, she was late in receiving an order accepting a Report and Recommendation authored by Magistrate Judge Virginia Morgan, and was therefore unable to file a motion for reconsideration. However, she had previously obtained extensions of time to file pleadings, and in this case, she was unable to recall whether she in fact was able to file a motion for reconsideration. *Plaintiff's Deposition*, 47-50. She testified that in a habeas case in which she received late correspondence, she was stymied in her ability to file a motion for reconsideration. However, she was represented by counsel in that case, and was not sure whether he filed a motion for reconsideration. *Id*., 71. In another case, she testified that because of a delay in the mail, her time for filing a response to a summary judgment motion was "shortened," and that the response she filed was not "efficient." *Id*., 80-81. She did not claim that she was unable to file a response.

Thus, there are at a minimum questions of material fact as to whether Ms. Salem was prejudiced by delays in receiving legal mail. Therefore, she is not entitled to summary judgment on her claim of denial of access to the courts.

## IV.   CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Disposition (Summary Judgment) on the Issue of Liability [Doc. #21] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 27, 2013                S/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 27, 2013, electronically and/or by U.S. mail.

                                      s/Michael Williams
                                      Case Manager to the
                                      Honorable R. Steven Whalen